Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1563 | **DATE** | 6/5/2002 |
| **CASE TITLE** | Mony Life Ins. Co. vs. Hinsdale Mgt. Corp., *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Defendants' motion to allow photographic and videotape evidence [0-1] is granted. All matters subject to the referral having been concluded, the referral is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | JUN 0 6 2002 date docketed | 44 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials 6/5/2002 |
| ✓ | Copy to judge/magistrate judge. | 02 JUN -5 PM 4:08 | date mailed notice |
| | JJK courtroom deputy's initials | Date/time received in central Clerk's Office | JJK7 mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**JUN 0 6 2002**

MONY LIFE INSURANCE COMPANY f/k/a )
THE MUTUAL LIFE INSURANCE COMPANY )
OF NEW YORK, )
)
      Plaintiff, )
) No. 00 C 1563
vs. )
) Judge Andersen
) Magistrate Judge Schenkier
HINSDALE MANAGEMENT CORPORATION )
and AMERICAN, BANK AND TRUST )
COMPANY, as Trustee under Trust Number 1267, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

In this diversity action, MONY Life Insurance Company alleges that its landlord, Hinsdale Management Corporation, breached a commercial property lease by failing to properly maintain the premises. As a remedy for this breach, MONY seeks recovery of money damages. Shortly after this lawsuit commenced, MONY vacated the premises and stopped paying rent, which gave rise to Hinsdale filing a counterclaim for recovery of unpaid rent and unjust enrichment.

After MONY filed this lawsuit, but before it vacated the leased premises, Hinsdale's vice president and general counsel, Caroline Koplin Palmer, entered upon the premises leased to MONY on two occasions and took photographs and videotapes of the condition of the premises. The visits by Ms. Palmer to take the photographs and videotapes occurred late at night or early in the morning, and not during MONY's normal business hours. Prior to this lawsuit, Ms. Palmer regularly entered the leased premises to supervise the evening cleaning staff and to distribute their weekly pay checks; MONY knew about these visits and never objected to them. However, Hinsdale did not advise

44

MONY that Ms. Palmer (or anyone else on Hinsdale's behalf) would be coming to take photographs or videotapes after this lawsuit was initiated, did not invite anyone from MONY to attend, and did not ask for MONY's permission to take the photographs and videotapes.

Presently before the Court is a dispute concerning the propriety of Hinsdale's activity in taking these photographs and videotapes. The issue surfaced during a hearing with the district judge, at which time MONY argued that Hinsdale should not be able to use the photographs and videotapes during an upcoming settlement conference. This dispute resulted in Hinsdale filing a motion seeking an *in limine* ruling that the photographs and videotapes are admissible in the litigation, and may be used during a settlement conference (doc. # 0-1).[1] Hinsdale argues that it did nothing wrong in procuring the photographs and videotapes; alternatively, Hinsdale argues that even had it acted improperly, exclusion of the evidence would be unwarranted. For its part, MONY argues that Hinsdale had no right under the lease to enter the premises to take the photographs and videotapes; that Hinsdale's activities constituted a site inspection that was done without following the procedure required by Rule 34 of the Federal Rules of Civil Procedure; and that Hinsdale's conduct thus constitutes an abuse of the discovery process that should be sanctioned by barring use of the photographs and videotapes.

This matter was referred to the Court by the district judge for a ruling on the admissibility of the videotape (and photographic) evidence (doc. # 36). This dispute is now fully briefed, and for the reasons set forth below, the Court rules that Hinsdale's conduct does not bar use of the photographic and videotape evidence. Thus, assuming that Hinsdale can lay the kind of foundation

---

[1]Hinsdale's motion originally addressed only videotape evidence; during a motion hearing on May 15, 2002, the Court granted Hinsdale's oral request to amend the motion to include both photographs and videotape evidence.

that would be necessary for admissibility of any photographic or videotape evidence, the photographs and videotapes at issue here will be admissible at trial.

**I.**

We start by addressing the question of whether the lease agreement gave Hinsdale the right to enter upon the premises and take photographs and videotapes. The parties agree that this question is governed by Section 3 of the lease agreement – but they disagree about what that section means. Accordingly, we quote Section 3 of the lease agreement in full:

> The Lessor may enter in and upon the demised premises at all reasonable hours for the purpose of examining the same, or for making such repairs or alterations to the demised premises, or the building of which they are a part, as may be necessary for the safety and preservation thereof. However, if Lessee's use or occupancy is disturbed by such repairs or alterations the rent shall proportionately abate.

By its express terms, this language allowed Hinsdale the right to enter the leased property for the purposes of examining it. It would strain credulity to interpret this language only to afford Hinsdale a right to visually examine the premises, and not to document – whether in writing or by photographs or videotapes – what the examination revealed. MONY nonetheless argues that this section imposed two preconditions on any right to make an examination, both of which Hinsdale failed to meet. For the reasons that follow, the Court disagrees.

*First*, MONY argues that the right of examination only exists to the extent "necessary for the safety and preservation" of the premises (MONY Mem. at 6). In the Court's view, that interpretation of Section 3 of the lease agreement makes no sense. As a linquistical matter, the clause setting forth the condition "as may be necessary for the safety and preservation thereof" clearly applies to the right to make repairs or alterations to the demise premises or the building, and not to the right of

3

examination. As a matter of common sense, one reasonably might expect that the lease would set a higher standard for making repairs or alterations (which could disturb MONY's quiet enjoyment of the property) than for making a mere examination of the premises, which would be far less intrusive. Indeed, it would make little sense to allow the landlord to examine the premises only if necessary for the safety and preservation of the premises, when an examination surely would be necessary in order to determine whether unsafe conditions existed. We find that MONY's interpretation does not comport with a common sense reading of the plain language of the lease, and therefore reject it.

*Second*, MONY argues that the inspection took place in the middle of the night, and thus was not authorized by the lease agreement because it did not occur "during normal business hours" (MONY Mem. at 6). However, Section 3 of the lease agreement does not limit the right of examination to "normal business hours," but rather states that examinations may occur "at all reasonable hours." An examination that takes place during hours when MONY is not conducting its business activities strikes the Court as within the scope of the "all reasonable hours," language, as an examination after business hours is calculated to minimize or avoid disruption of MONY's ordinary business activities. Moreover, the evidence submitted on the motion indicates that Hinsdale regularly entered upon the leased premises after working hours for the purpose of cleaning and supervising the activities of the cleaning crew – and that MONY did not object.

We have considered the cases cited by MONY for the proposition that Hinsdale's inspection was improper (MONY Mem. at 6 and n.4), but find them unpersuasive. The situations in those cases all involved conduct by the landlord that was far more intrusive than Hinsdale's conduct here. *See Bluecross Association v. 666 North Lake Shore Drive Associates*, 427 N.E. 2d 270, (Ill. App. 1st Dist.

4

1981) (landlord engaging in demolition work that disrupted the plaintiffs' personnel and computer operations); *Vondra v. Felcman*, 202 Ill. App. 136 (Ill. App., 1st Dist. 1916) (landlord throwing tenant's property into the alley while making repairs); *West Chicago Street R. Co. v. Morrison, Adams & Allen Co.*, 43 N.E. 393 (Ill. S.Ct. 1896) (owner of the premises dismantling the building, rendering it untenable). MONY does not point to any disruption to its operations caused by Hinsdale's examination, much less the kind of extreme disruption involved in these cases. None of these cases suggests that Hinsdale exceeded the rights it enjoyed under the lease to examine the premises, and to document what it found.

## II.

Having found that Hinsdale had a contractual right to enter the premises and take the photographs and videotapes at issue, the Court now turns to the question of whether Rule 34 trumps that contractual right and thus required that Hinsdale make a formal discovery request for a site inspection. We find that it does not.

Rule 34(a)(2) states that "[a]ny party may serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b)." The typical situation in which a Rule 34 request for a site inspection is served is where the requesting party seeks access to an opponent's premises where, absent the lawsuit, the requesting party would have no right to enter that premises. For example, a plaintiff suing a defendant for theft of trade secrets may seek to inspect the defendant's facility to observe the manufacturing process, with an eye toward determining what (if any) elements of the plaintiff's alleged trade secret process are being

5

used. In the ordinary course of business, the plaintiff would not have a right to enter the defendant's facility and to inspect the manufacturing process. But, in the context of a lawsuit, Rule 34 provides a mechanism for plaintiff to have access to the defendant's premises, under conditions set by the Court.

This case does not fit that Rule 34 model because, even absent the lawsuit, Hinsdale had a right to enter upon the premises, to examine the premises, and to document what it found. Hinsdale did not need an order under Rule 34 to gain access to the property; Hinsdale had that right under the lease agreement. MONY's position is premised on the proposition that Hinsdale's inspection was not authorized by the lease – a proposition that the Court rejects. And, we do not find anything in the language or history of Rule 34 that would allow MONY to use the rule as a sword, to strip Hinsdale of its contractual right to enter upon the premises. None of the cases that MONY cites (MONY Mem. at 4-5) presents a situation where the party seeking an inspection had an independent right, quite apart from Rule 34, to enter upon the premises.

The Court has considered MONY's argument that because Hinsdale took the photographs and videotapes without notice, Hinsdale has been deprived of the right to document what it claims was Hinsdale's selective photography and videography, and Hinsdale's efforts to make the space presentable before taking any photographs or videotapes (MONY Mem. at 3). We note that MONY apparently took its own photographs of the premises without prior notice to Hinsdale (*see* Hinsdale Reply at 2). MONY, of course, had every right to do so – just as we have found that Hinsdale, under the terms of the lease, had the right to enter the premises and to take photographs and videotapes. It should be for the fact finder to determine, in light of all the evidence that will be presented, which

finder's consideration of that question by barring, *in limine*, one side's photographic or videotape evidence.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Hinsdale's motion to allow photographic and videotape evidence (doc. # 0-1). Specifically, the Court holds that Hinsdale did not violate the lease agreement or abuse the discovery process by its conduct in obtaining the photographs and videotapes, and that those photographs and videotapes will be admissible to the extent that an adequate evidentiary foundation for them is laid at trial.[2]

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: June 5, 2002**

---

[2] Given that we have found that Hinsdale had a contractual right to take the photographs and videotapes, and that Hinsdale was not required to make a Rule 34 request for site inspection, the Court need not address the question of whether an exclusion order would be an appropriate sanction had Hinsdale violated the lease and the discovery rules in obtaining this evidence.

7